# EXHIBIT 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| CHELSEA RUTTER, individually and behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BRIGHT HORIZONS FAMILY SOLUTIONS, INC. d/b/a BRIGHT HORIZONS CHILDREN'S CENTERS, INC.,<br><br>Defendant. | NO.  22-2-19810-9 SEA<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chelsea Rutter, individually and on behalf of all others similarly situated, by and through undersigned counsel, brings these causes of action pursuant to RCW 49.62 and RCW 19.86 against Defendant Bright Horizons Family Solutions, which conducts business as Bright Horizons Children's Centers ("Bright Horizons"). Plaintiff states the following:

## I.  INTRODUCTION

1. Plaintiff brings this class action to remedy Bright Horizons' widespread violations of Washington's protections against the use of noncompetition covenants, which keep Bright Horizons childcare workers trapped in their jobs, depress their wages, and rob them of an important source of bargaining power.

CLASS ACTION COMPLAINT - 1

2. Plaintiff and the proposed class are childcare workers at Bright Horizons who provide childcare services to families in Washington. It has become increasingly difficult to find high-quality and affordable early childhood care in Washington. Yet wages for Bright Horizons' childcare workers have not kept pace with the increased demand for high-quality childcare. Most Bright Horizons childcare workers earn around or just above minimum wage.

3. To retain its workforce without having to pay them more or treat them better, Bright Horizons relies on an unenforceable noncompetition covenant in the form of a requirement that its families pay Bright Horizons $5,000 if they hire one of Bright Horizons' childcare workers as an employee, for example as a full-time nanny. This covenant, which is a term and condition of employment, prevents Plaintiff and other similarly situated workers from seeking out and securing employment opportunities with those families, who serve as one of the most serious competitors to Bright Horizons in the employment of its childcare workers.

4. Without this unlawful restraint, Bright Horizons would have to pay its workers more or treat them better to keep them working for Bright Horizons as opposed to seeking employment with a family. The threat that workers would find employment with a family should be especially serious for workers who have developed years of experience and relationships with families who use Bright Horizons centers. If Bright Horizons was not violating Washington law, those workers could be hired by families who would pay less for childcare than their fees to Bright Horizons but who could still reward those caregivers with higher wages. In other words, Bright Horizons' families could cut out the middleman.

5. But Bright Horizons uses the noncompetition covenant to keep its workers trapped in their jobs while restricting competition for their services. This means that Bright Horizons workers are trapped working for Bright Horizons even if their skills and experience working with children are worth substantially more to the family than Bright Horizons pays.

6. In March 2020, at the beginning of the COVID-19 pandemic when some Bright Horizons centers were closed, Bright Horizons used its noncompetition covenant to impede workers from seeking full-time and permanent employment with families desperate for

CLASS ACTION COMPLAINT - 2

childcare. The result was that Bright Horizons staff could not find permanent employment with the potential employers most interested in seeking their services, and families could not obtain childcare services outside of Bright Horizons from their most trusted childcare providers without paying an exorbitant penalty. Both childcare workers and families were held captive to Bright Horizons to the detriment of workers and families.

## II.  JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under RCW 4.28.185 because Bright Horizons transacts business in the state of Washington and is registered to do business in Washington.

8. Venue is proper under RCW 4.12.020(3) because Plaintiff was employed by Bright Horizons in King County, Washington and Plaintiff's causes of action arose in King County.

## III.  PARTIES

9. Plaintiff Chelsea Rutter is a resident of Washington who was employed by Bright Horizons in Washington as a teacher from approximately April 2019 to May 2021.

10. Bright Horizons is a limited liability company organized under the laws of the State of Delaware, having its principal place of business in Massachusetts. Bright Horizons provides private childcare, backup care, and early childhood education for children at various locations throughout the country, including operating approximately thirty childcare centers in Washington.

## IV.  FACTS

A. **Background and Business Model of Bright Horizons**

11. Bright Horizons employs more than 16,000 workers in the United States through its network of more than 650 early education and childcare centers, with the capacity to serve approximately 114,000 children and their families.

CLASS ACTION COMPLAINT - 3

12. As of December 31, 2021, Bright Horizons had more than 1,350 client relationships with employers across a diverse array of industries, including more than 200 Fortune 500 companies.

13. Bright Horizons also provides back-up childcare and elder care and provides educational advisory services.

14. Bright Horizons has six times more employer-sponsored centers in the United States than its closest competitor.

B. **Bright Horizons' Noncompetition Covenant**

15. To restrict competition for its childcare workers' services, Bright Horizons uses noncompetition covenants in its contracts with the families who use its childcare.

16. Specifically, Bright Horizons' form contract with families provides that "if a staff member leaves Bright Horizons' employment to work for [a client family] within six (6) months of his or her departure; [the client family] agree[s] to pay a placement fee of $5000."

17. Bright Horizons does not disclose the existence of the noncompetition covenant to childcare workers before their employment with Bright Horizons. But Bright Horizons does communicate the noncompetition covenant as a term and condition of employment once those workers begin working for Bright Horizons.

18. The restriction is particularly problematic because the childcare workers providing care for families' children are especially attractive potential employees to those families.

19. The longer a Bright Horizons childcare worker works with children at Bright Horizon childcare centers, the more valuable they become to the families of those children. This experience and expertise should give workers more bargaining power. Even if a worker never explicitly considers going to work directly for a family, the threat that a family could hire a worker directly would force Bright Horizons to pay workers more and treat them better.

20. Instead, Bright Horizons limits competition for its workers by keeping both its workers and family clients captive through noncompetition covenants. For families, the

CLASS ACTION COMPLAINT - 4

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

covenant makes it substantially more expensive to hire potential nanny employees who are the most qualified to perform the work. For Bright Horizons childcare workers, the covenant substantially undermines their competitiveness with the employers that are likely to place the greatest value on their services.

21. The noncompetition covenant thus allows Bright Horizons to pay its childcare workers less and charge its client families more than it would be able to absent the covenant.

22. The noncompetition covenant is not designed to protect Bright Horizons' investment in training its childcare workers. In fact, Bright Horizons merely requires childcare workers to sit through self-guided, standardized training modules. New workers also receive on-the-job supervision by more senior childcare workers, who do not receive additional pay for their supervision duties. As a result, Bright Horizons invests substantially less than $5,000 per childcare worker in training. And what investment it does make in training, Bright Horizons recoups over time, but the penalty amount in its noncompetition agreement does not decrease, no matter how many months the childcare worker has been on the job.

23. Moreover, the value to families of Bright Horizons childcare workers' experience caring for their children derives principally from those workers' on-the-job experience, and the skills they develop through their work for Bright Horizons, not through any specialized training provided by Bright Horizons.

C. **Ms. Rutter's Employment at Bright Horizons**

24. Plaintiff Chelsea Rutter worked for Bright Horizons as a childcare worker at Seattle-area centers for around two years.

25. In April 2019, she was hired as one of the first teachers at Bright Horizons at Interbay, a Bright Horizons childcare center in Seattle.

26. When Ms. Rutter first began working for Bright Horizons, she earned around $18.00 per hour. When she left her employment in 2021, she was earning approximately $20.00 per hour. Ms. Rutter earned substantially less than $100,000 per year during her employment with Bright Horizons.

CLASS ACTION COMPLAINT - 5

27. Bright Horizons did not communicate the noncompetition covenant to Rutter before she accepted employment with Bright Horizons. Later, during her orientation period, Bright Horizons staff disclosed the noncompetition covenant to a room full of new childcare workers, including Ms. Rutter, as a term and condition of employment with Bright Horizons.

28. In March 2020, during the beginning of the COVID-19 pandemic, Bright Horizons temporarily closed many of its childcare centers, including the Interbay center, and provided reduced childcare services for the children of first responders.

29. During this period, Ms. Rutter provided some babysitting for families of children for whom she had provided childcare at Bright Horizons' Interbay location.

30. In an effort to prevent her from continuing to provide such services and to ensure that both she and those families returned to Bright Horizons, Bright Horizons required Ms. Rutter to report to a position at a different Bright Horizons center that was less convenient for her. While the Interbay center was within walking distance from her home, the new center required a thirty-minute commute by car and was near a university, which made parking expensive, especially for someone making barely above minimum wage. The assignment also involved teaching a different age group than she had taught before.

31. Bright Horizons informed Ms. Rutter that if she did not report to work at this different center, she would be deemed to have voluntarily resigned from her position, which would affect her ability to access unemployment insurance.

32. Ms. Rutter also knew that the families for whom she was providing care would likely not be able to hire her for permanent positions because of the noncompetition covenant and the $5,000 penalty.

33. Ms. Rutter's employment with Bright Horizons ended in 2021, after a prolonged period during which Bright Horizons mistreated Ms. Rutter, including by failing to protect her from a co-worker who had engaged in domestic violence against her.

CLASS ACTION COMPLAINT - 6

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## V.  CLASS ACTION ALLEGATIONS

34. Plaintiff brings this case on behalf of themselves and the following proposed class under CR 23:

> All staff members who are or were employed by Bright Horizons in Washington at any time on or after June 30, 2019.

35. **Numerosity:** The proposed class includes more than 100 members. There are approximately thirty Bright Horizons childcare centers in Washington and each center employs between 15 and 30 staff members who are covered by the noncompetition covenant.

36. **Commonality and Predominance:** The claims of the proposed class raise several common questions, including

   a. Whether the penalty that Bright Horizons includes in contracts with client families and expresses as a term and condition of employment to childcare workers is a noncompetition covenant under Washington law;

   b. Whether maintaining a noncompetition covenant is an unfair or deceptive act or practice under Washington's Consumer Protection Act;

   c. Whether Bright Horizons' noncompetition covenants and enforcement of those covenants occur in trade or commerce;

   d. Whether Bright Horizons' noncompetition covenants affect the public interest;

   e. Whether Plaintiff and proposed class members have been injured by Bright Horizons' noncompetition covenant.

These common questions predominate over any individual questions.

37. **Typicality:** Plaintiff was employed by Bright Horizons during the class period and was subject to the noncompetition covenant. Her claims under Washington's noncompetition covenant law and Consumer Protection Act are typical of the class's claims.

38. **Adequacy of Representation:** Plaintiff is an appropriate representative party for the class and will fairly and adequately protect the interests of the class. Plaintiff understands

CLASS ACTION COMPLAINT - 7

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed class. Plaintiff and her counsel will fairly and adequately protect the interests of the class and have no conflict of interest with other members of the class.

39. **Superiority:** Plaintiff and class members have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, however, most class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for workers making small claims, and deters illegal activities. The class members are readily identifiable from Defendant's records, and there will be no significant difficulty in the management of this case as a class action.

40. **Injunctive Relief:** Defendant's conduct is uniform to all members of the class. Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or declaratory relief is appropriate with respect to the class as a whole. Plaintiff is also entitled to obtain injunctive relief under RCW 19.86.090.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF WASHINGTON LAW PROHIBITING UNLAWFUL NONCOMPETION COVENANTS, RCW 49.62.005, *ET SEQ.*
**(Plaintiff on behalf of the class)**

41. Plaintiff was an "employee" of Bright Horizons under RCW 49.62.010(2).

42. Defendant was an "employer" of Plaintiff under RCW 49.62.010(3).

43. The $5,000 penalty for families that hire Bright Horizons staff members for employment is a noncompetition covenant under Washington law because it restrains employees from engaging in a lawful profession and is not otherwise excluded from the definition of noncompetition covenant under Washington law. RCW 49.62.010(4).

44. The noncompetition covenant is void and unenforceable because Defendant did not disclose it to Plaintiff before she accepted employment.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

45. It is also unenforceable because Plaintiff earned less than $100,000 per year. RCW 49.62.020.

46. Plaintiff was aggrieved by the noncompetition covenant because it deprived her of an important source of bargaining power—the freedom to leave to work for a family with a child at Bright Horizons. It thereby suppressed her wages, causing her to earn less than she would have otherwise and causing substantial emotional distress.

47. Plaintiff is a party to the noncompetition covenant because such covenant expressly governed her employment and because Bright Horizons communicated the covenant to her as a term and condition of her employment.

48. Plaintiff is thus entitled to actual and compensatory damages in the form, among other things, of the wages she would have earned absent the noncompetition covenant, which suppressed her bargaining power and placed downward pressure on the wages of all employees covered by it, or a statutory penalty of $5,000, whichever is greater.

49. Plaintiff is also entitled to reasonable attorneys' fees, expenses, and costs incurred in this proceeding, and other relief that the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT
**(Plaintiff on behalf of the class)**

50. Plaintiff is a "person" within the meaning of the Washington Consumer Protection Act. RCW 19.86.010(1).

51. Bright Horizons' noncompetition covenant was used in "trade or commerce" within the meaning of the Washington Consumer Protection Act. RCW 19.86.010, *et seq.*

52. Defendant's maintenance of an illegal and void noncompetition covenant, which harmed Plaintiff and the class and the consumers of their services, constitutes an unfair practice under Washington law because such conduct is immoral, unethical, oppressive, or unscrupulous.

CLASS ACTION COMPLAINT - 9

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

53. Defendant's maintenance of an illegal and void noncompetition covenant that it did not disclose to Plaintiff before she accepted employment is a deceptive practice under Washington law because it has the capacity to deceive and because it is likely to deceive a reasonable worker into believing that they will not be bound by any noncompetition covenant by accepting employment with Defendant and by suggesting that a contractual term that is unenforceable is in fact enforceable, thereby chilling workers from seeking out employment opportunities and undermining their bargaining power.

54. Defendant's unfair or deceptive acts or practices impact the public interest because they have injured Plaintiff and other people, including class members and families with children who received childcare from Bright Horizons, and have the capacity to injure hundreds or thousands of other Washington residents, including both workers and consumers of childcare services. Moreover, Defendants' conduct is ongoing and likely to continue to injure the public.

55. As a result of Defendant's conduct, Plaintiff has suffered an injury in fact and lost money. Plaintiff was paid less than she would have been for her childcare services in the absence of Bright Horizons' unfair and deceptive practices.

56. Plaintiff is thus entitled to legal relief against Defendants, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. Actual damages;

B. Treble damages under the CPA;

C. Statutory penalties under Washington noncompetition covenant law to the extent actual damages do not exceed $5,000 per person;

CLASS ACTION COMPLAINT - 10

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

D. Injunctive and declaratory relief declaring Defendant's noncompetition covenant void and unenforceable and enjoining Defendant from including such covenant in contracts with families or communicating it to its childcare workers;

E. Attorneys' fees and costs of suit; and

F. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED AND DATED this 1st day of December, 2022.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Toby J. Marshall, WSBA #32726
Email: tmarshall@terrellmarshall.com
Elizabeth A. Adams, WSBA #49715
Email: eadams@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6608
Facsimile: (206) 319-5450

David Seligman, *Pro Hac Vice Forthcoming*
Email: david@towardsjustice.org
Juno Turner, *Pro Hac Vice Forthcoming*
Email: juno@towardsjustice.org
Valerie Collins, *Pro Hac Vice Forthcoming*
Email: valerie@towardsjustice.org
TOWARDS JUSTICE
PO Box 371680, PMB 44465
Denver, Colorado 80237-5680
Telephone: (720) 441-2236

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 11

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com