UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHELSEA RUTTER, <br><br> Plaintiff, <br><br> v. <br><br> BRIGHT HORIZONS FAMILY SOLUTIONS INC, <br><br> Defendant. | CASE NO. C23-0233-KKE <br><br> ORDER DENYING MOTION TO DISMISS AND REMANDING CASE TO STATE COURT |

This matter comes before the Court on Defendant Bright Horizons Family Solutions Inc.'s ("Bright Horizons") motion to dismiss. Dkt. No. 7. For the reasons stated below, Bright Horizons' motion is denied, and this matter is remanded to King County Superior Court.

## I. BACKGROUND

Bright Horizons runs a network of more than 650 early education and childcare centers across the United States. Dkt. No. 1-2 ¶ 11. Plaintiff Chelsea Rutter was employed as a teacher by Bright Horizons in Seattle from approximately April 2019 to May 2021. *Id.* ¶ 9. Rutter alleges she was hired to work at the Interbay center, and did so until March 2020, when Bright Horizons temporarily closed many of its childcare centers because of the COVID-19 pandemic. *Id.* ¶ 28. During the closure, Rutter alleges she worked as a babysitter for client families she knew from the

Interbay location. *Id.* ¶ 29. Rutter further alleges that Bright Horizons subsequently required Rutter to work at a different Bright Horizons center, farther from her home, in an effort to prevent her from continuing to babysit for the Interbay client families. *Id.* ¶ 30.

Bright Horizons' enrollment contract with its client families provides "if a staff member leaves Bright Horizons' employment to work for [a client family] within six (6) months of his or her departure; [the client family] agree[s] to pay a placement fee of $5,000." Dkt. No. 1-2 ¶ 16; Dkt. No. 8-1 (hereafter "placement fee provision"). Rutter alleges that she "knew the families for whom she was providing care would likely not be able to hire her for permanent positions because of the [placement fee provision]." Dkt. No. 1-2 ¶ 32. Rutter left her employment with Bright Horizons in May 2021, though does not allege what caused her departure. *Id.* ¶ 33.

Rutter filed this putative class action against Bright Horizons in state court, alleging the placement fee provision violates Washington's Noncompetition Covenants statute[1] and the Washington Consumer Protection Act ("CPA").[2] Dkt. No. 1-2. Bright Horizons subsequently removed the case to this Court. Dkt. No. 1. Rutter alleges the placement fee provision both "restrained" her ability to obtain employment directly with Bright Horizons client families and had the effect of suppressing her wages by reducing her bargaining power. Dkt. No. 1-2 ¶¶ 43, 46.

Bright Horizons moved to dismiss Rutter's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 7. The Court heard oral argument on the motion on January 9, 2024. Dkt. No. 26. At the hearing, the Court raised the issue of whether Rutter had adequately pleaded Article III standing sufficient to invoke this Court's jurisdiction. Upon consideration of the parties' briefing and argument, the Court concludes that Rutter has not adequately pleaded an injury, and as such, the Court lacks jurisdiction over her claims.

---

[1] WASH. REV. CODE § 49.62.050.
[2] WASH. REV. CODE § 19.86.010.

ORDER DENYING MOTION TO DISMISS AND REMANDING CASE TO STATE COURT - 2

## II. ANALYSIS

**A.      Rutter Lacks Article III Standing.**

In order to establish standing to sue under Article III of the Constitution, a plaintiff must establish: "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *In re Brower*, 651 B.R. 770, 775 (N.D. Cal. 2023) (cleaned up).  Standing is required for each claim and each form of relief sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The requirements for standing "can neither be waived by the parties nor ignored by the court[.]" *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011).  Standing to sue in federal court is governed by federal law, even in diversity cases based on state-law claims and in actions removed from state court. *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994).  This Court is obligated to assure itself of its own subject-matter jurisdiction, and as such, must examine a plaintiff's standing to sue, even when not raised by an opposing party. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

"A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016) (cleaned up).  "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.  This is equally true in class action cases. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437–39 (2021) (where class members' credit reports contained errors in violation of the Fair Credit Reporting Act but had not been shared with third parties, class members lacked standing for want of injury).

1. <u>Rutter has not alleged an injury under Washington's Noncompetition Covenants statute.</u>

Rutter argues the placement fee provision constitutes a void and unenforceable noncompetition covenant under section 49.62.050 of the Revised Code of Washington. Dkt. No. 11 at 10.[3] While Rutter concedes she was not "prohibited" from engaging in a lawful profession, she argues she was nonetheless "restrained" in terms of her mobility in the labor market and her ability to be hired as a nanny by Bright Horizons client families. *Id.* at 12. The only allegation in the complaint that directly supports her "restraint" theory is that Rutter claims she "knew that the families for whom she was providing care would likely not be able to hire her for permanent positions because of the noncompetition covenant and the $5,000 penalty." Dkt. No. 1-2 ¶ 32. Rutter also argues the Court should draw a reasonable inference that Rutter "could not leave her job for alternative work, at least in part because of the $5,000 penalty" because Rutter remained employed at Bright Horizons despite a prolonged period of alleged mistreatment. Dkt. No. 11 at 12; Dkt. No. 1-2 ¶ 33.

Bright Horizons argues that the Noncompetition Covenants statute does not apply to the placement fee provision because it appears in the enrollment agreement between Bright Horizons and its customers, not in any employment agreement with Rutter. Dkt. No. 7 at 5. No Washington court has determined whether section 49.62.050 of the Revised Code of Washington encompasses agreements that merely impact employees in some way, as opposed to agreements *with* employees that restrict their workplace mobility. Both Rutter and Bright Horizons cite mixed authority from other jurisdictions evaluating analogous restrictions on hiring under allegedly analogous state laws. Dkt. No. 7 at 8–9; Dkt. No. 11 at 13–15.

---

[3] To avoid confusion, the Court uses CM/ECF page numbers in its record citations.

ORDER DENYING MOTION TO DISMISS AND REMANDING CASE TO STATE COURT - 4

The Court need not reach whether the placement fee provision violates Washington law, as Rutter has not adequately alleged a concrete, non-hypothetical injury sufficient to establish Article III standing in this Court. *See Spokeo*, 578 U.S. at 340. To the contrary, Rutter's alleged injuries are entirely hypothetical. While she alleges that she knew Bright Horizons client families would "likely" not be able to hire her because of the placement fee provision, she does not allege the basis for that prediction. More importantly, Rutter does not allege that she sought a job with a Bright Horizons client family and was turned down, nor that any Bright Horizons client family had in fact contemplated offering her a job. Similarly, she does not allege that Bright Horizons has ever attempted to enforce the placement fee provision, or that any Bright Horizons client family based any nanny hiring decision upon it, let alone a decision not to hire Rutter when it otherwise would have.

Because Rutter does not allege a concrete, non-hypothetical injury, she lacks standing, and this Court does not have subject matter jurisdiction over this claim. *Warth*, 422 U.S. at 498.

      2.      <u>Rutter has not alleged an injury arising under the CPA.</u>

Rutter's CPA claim suffers from the same deficiency. Rutter alleges the placement fee provision constitutes a prohibited unfair or deceptive practice because it was not disclosed to her before she accepted employment. Dkt. No. 1-2 ¶ 53; WASH. REV. CODE § 19.86.020 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."). Rutter alleges she suffered injury because she "was paid less than she would have been" absent the placement fee provision *Id.* ¶ 55. But Rutter alleges no facts in support of this claim.

While generally claiming the placement fee provision suppressed her wages or reduced her bargaining power, Rutter does not allege that she ever sought an increase in her wages from Bright Horizons and was turned down. She likewise fails to allege that she ever sought a nanny position

with a Bright Horizons client family, let alone a Bright Horizons client family that would have paid her more than she earned as a childcare center employee, but for the placement fee provision. Rutter offers no quantifiable (or even theoretical) measure by which her wages were reduced. While Rutter alleges she incurred additional costs due to her transfer to a different Bright Horizons facility (Dkt. No. 1-2 ¶¶ 30, 31), these injuries are not "fairly traceable" to the placement fee provision. *Brower*, 651 B.R. at 775.

**B.  This Case is Remanded to State Court.**

When a case has been removed from state court, and a federal court finds the plaintiff does not have Article III standing, the proper remedy is to remand the case to state court. 28 U.S.C. § 1447(c); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016). So it is here.

### III.  CONCLUSION

Because the Court lacks subject-matter jurisdiction to hear any of Rutter's claims, Bright Horizons' motion to dismiss (Dkt. No. 7) is DENIED, and the case is REMANDED to the King County Superior Court for further proceedings.

Dated this 25th day of January, 2024.

Kymberly K. Evanson
United States District Judge